East'n District.
*May*, 1823.

CRAWFORD
*vs.*
LOUISIANA
STATE BANK.

---

### HONORE vs. WHITE & AL.

APPEAL from the court of the parish and city of New-Orleans.

MARTIN, J. delivered the opinion of the court. The plaintiff, as master and part owner of the steam-boat Hecla, claims $2475 67, for freight of a quantity of merchandise, according to an account annexed to the petition. He further

A suit for a breach of con-tract made thro' an agent should be brought a-gainst the prin-cipal for whom the agent con-tracted.

East'n District.
May, 1823.

HONORE
vs.
WHITE & AL.

shows, that the defendants in December, 1818, caused to be shipped on board of the steam-boat Henderson, in New-Orleans, a quantity of merchandise, to be delivered at the mouth of Cumberland river, (according to the bill of lading annexed to the petition) which were landed at Natchez, (the said steam-boat being accidentally disabled from proceeding any further) and delivered to Griswold & Weeks: and the plaintiff, being then in New-Orleans with his boat, desirous of procuring a freight to Louisville, the defendants engaged him to proceed to Natchez, take the goods there left by the Henderson, and carry them to Nashville, for a freight expressed in the bill of lading, annexed to the petition; and gave him an order to receive the said goods at Natchez, from Griswold & Weeks.—That accordingly the plaintiff left room in his boat for these goods, and refused to receive others that were offered him, in sufficient quantity to fill her up, and to be delivered at Louisville, whither he was bound. That he accordingly proceeded to Natchez, and applied to Griswold & Weeks for the aforesaid goods, but they refused delivering them or any part therof; of which he immediately gave notice to the de-

East'n District
*May,* 1823.

HONORE
*vs.*
WHITE & AL.

fendants; that, in consequence, he was compelled to proceed with a great part of his boat empty, and lost the freight of a considerable part of her.

The answer denies that the defendants are indebted to the plaintiff in the sum claimed, or any part thereof, in the manner and form alleged—and all the plaintiff's allegations, from, or by reason of which, they might be liable to pay.

There was judgment for the plaintiff, and the defendants appealed.

Gray deposed, that at the time related to in the petition, he was clerk to the plaintiff—master and part owner of the Hecla—that the defendant Chapman (White's partner) came on board, and gave an order for a quantity of goods, about twenty or thirty tons, to be taken in at Natchez and delivered at Louisville or Cumberland river, he does not recollect which. He expected the goods would be delivered on the boat's arrival at Natchez—from what passed between the parties, he felt assured the goods would be delivered—the order he speaks of was delivered by Chapman, but he does not know whether it was given by his or another house. Chapman was very

anxious that the boat should start on that day. The plaintiff told deponent the defendants would assist in getting freight for the boat. He does not know who advertised her, nor whether the plaintiff paid commission for procuring any freight, but presumes the defendants charged it. He does not know that the plaintiff made any bargain with any body but Chapman for the freight of these goods. The boat proceeded immediately to Natchez; on her arrival, a demand of the goods was made from Reynolds & Weeks, who refused to deliver them, and the plaintiff protested. (The protest was produced and filed.) The deponent thinks they had a letter from the defendants to Griswold & Weeks. He inclosed some papers to them, but he does not recollect whether it was such a letter, or the bill of lading annexed to the petition. The freight was from 24 to $2500; there being twenty or thirty tons. About the time of this transaction an English gentleman offered a number of passengers, who he supposes would have filled the cabin, and mentioned he had also some goods. He thinks that by waiting a few days, the plaintiff might have had as much freight as he was promised at Natchez, and

East'n District.
*May*, 1823.

HONORE
*vs.*
WHITE & AL.

passengers besides. The plaintiff's father was then in New-Orleans buying goods, which he shipped in the Exchange. He told deponent he would give the boat some freight, and wanted her to wait. The deponent now commands the steam-boat Henry Clay, consigned to the defendants, her agents in New-Orleans. He assisted the plaintiff in getting freight, and generally in doing the business of the Hecla.

In his cross examination, the witness stated that he recognised the bill of lading, annexed to the petition, and that the merchandise mentioned in it, was shipped by Jackson & Reynolds, and he presumes that it was in consequence of the order, endorsed on the bill of lading, and the statement made by Chapman, that the plaintiff was induced to proceed to Natchez for the goods. He believes the defendants have been engaged in procuring freight for the Hecla, as commission merchants.

Jackson deposed that the defendants, in January or February, 1819, as agents for the steam-boat Henderson, engaged from Jackson & Reynolds, the freight mentioned in the bill of lading, annexed to the petition. He understood the goods thus shipped were, ow-

East'n District.
May, 1823.

HONORE
vs.
WHITE & AL.

ing to the disability of the Henderson, left at Natchez. The defendants applied to the deponent to transfer the freight to the Hecla, and make the endorsement on the bill of lading. The freight amounted to $2413 71. When Chapman applied to him for the freight for the Hecla, he considered him as the agent of that boat. He also considered the defendants as agents of the Henderson. He did not understand from the plaintiff, nor any other owner of the Hecla, that they were agents for her. Bowen, the captain, and as he understands a partner of the Henderson, lived in Kentucky.

Reynolds deposed, the defendants had no interest in the goods sent by the Henderson, and were intended to be shipped in the Hecla—they were the agents of the Henderson. This witness having heard Jackson's testimony, confirmed it.

Turner deposed, the plaintiff was introduced to him by White, in his office, as a person who wished his advice. The plaintiff desired to be informed whether the freight procured here, for the goods from Natchez to Cumberland, could be recovered, and from whom? The deponent thought it might, from Jackson and Reynolds. During the pendency of the

suit, he considered the defendants as the plain-

tiff's agents, and consulted with them as such.
They always told him they were the plaintiff's
agents in the business. The latter desirous
of knowing how the business progressed,
wrote to the deponent. It is strongly impres-
sed on his mind that the defendants acted in
the capacity of agents of the Hecla, for pro-
curing her freight, when they obtained the or-
der from Jackson & Reynolds—but whether
he received this impression from the papers
submitted to him, or from the conversation of
either or both parties, he cannot say.

The defendants' letter to Griswold &
Weeks, by the plaintiff, is in the following
words:—We are this moment in receipt of
yours, per steam-boat Henderson: the pel-
tries shall have our best attention. We have
given captain Honore an order from Messrs.
Jackson & Reynolds, of this place, as well as
the bill of lading, for the goods they shipped per
the Henderson, and deposited in your ware-
house: you will therefore deliver to him,
taking a bill of lading as the one he has, and
forward two to us, as soon as delivered. We
remain, &c. M. White & Co. New-Orleans,
Feb. 5, 1819.

East'n District.
*May*, 1823.

HONORE
*vs.*
WHITE & AL.

White deposed, that the defendants never did own any part of the steam-boat Henderson; nor were they entitled to any commission from her owners, for any freight which they might have caused to be transferred from her to the Hecla.

Had the failure been on the part of the plaintiff—had he neglected to stop at Natchez and call for the goods, which he complains were not deliverd him, there cannot be any doubt that Jackson & Reynolds, whose order for the delivery of them the plaintiff received, would have been entitled to demand damages from him—for the receipt of the order is evidence of his promise to call for and receive these goods. Had the goods been received, the evidence shows bills of lading would have been required, evidenceing a shipment by Jackson & Reynolds. We therefore conclude that they were the principals, whose goods were the object of the convention which took place between the plaintiff and the defendants, and the latter must be considered as agents only, and as agents of Jackson & Reynolds. It appears to us, the counsel consulted by the plaintiff, gave him correct advice.

It is therefore ordered, adjudged and de-

creed, that the judgment of the district court be annulled, avoided and reversed, and that there be judgment for defendants, with costs in both courts.

*Workman* for the plaintiff, *Hoffman* for the defendants.